```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            19 CR 297 (PAE)

JOSE PEREZ,

              Defendant.

------------------------------x
                                        New York, N.Y.
                                        April 24, 2019
                                        10:15 a.m.


Before:

                HON. PAUL A. ENGELMAYER,

                                        District Judge


                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  JACOB FIDDELMAN
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  SYLVIE J. LEVINE
```

J4OsPERa

1              (Case called)
2              MR. FIDDELMAN:  Good morning.  Jacob Fiddelman for the
3     United States.
4              THE COURT:  Good morning, Mr. Fiddelman.
5              MS. LEVINE:  Good morning, your Honor.  Federal
6     Defenders of New York by Sylvie Levine on behalf of Mr. Perez.
7              THE COURT:  All right.  Good morning, Ms. Levine, and
8     good morning to you, Mr. Perez.
9              THE DEFENDANT:  Good morning, sir.
10             THE COURT:  All right.  Mr. Fiddelman, this is our
11    initial conference in the case.  Tell me about the case.
12             MR. FIDDELMAN:  Yes, your Honor.
13             In this case, the defendant engaged in phone app
14    communications, followed by an extensive series of text
15    messages, with someone whom he believed to be a 12-year-old
16    girl for the purposes of meeting up and engaging in sexual
17    activity.  The individual with whom he was corresponding was,
18    in fact, an undercover detective.
19             After an extensive exchange of text messages,
20    including the defendant sending lewd photographs of himself
21    and requesting pornographic photographs of the undercover, a
22    meeting was set up, the defendant showed up, and he was in the
23    possession of an additional cell phone, which he had previously
24    claimed he was bringing as a gift for the 12-year-old girl.
25             So the defendant was then apprehended at the place of

1    the prearranged location.

2            THE COURT:  When was the arrest?

3            MR. FIDDELMAN:  The arrest was October 24, 2018.  The
4    defendant was then presented on October 25.

5            Since that time, the parties have been engaged in
6    extensive discussions regarding a disposition of the matter.

7            THE COURT:  Six months is extensive.

8            MR. FIDDELMAN:  Yes.

9            Defense counsel has submitted a written mitigation
10   package to our office which, as your Honor is well aware, is a
11   very long process involving a psychiatric evaluation, followed
12   by review within the U.S. Attorney's office by a committee, all
13   with the hopes of determining what charges should be filed
14   against the defendant with respect to which statutes carry
15   which mandatory minimums.

16           The matters have moved forward in that process
17   significantly, but it is not yet complete.  We are awaiting a
18   supplemental submission from the defense, at which time the
19   government hopes to promptly turn around a decision, and I
20   believe all parties are optimistic that there will be a
21   resolution in this case one way or another.

22           THE COURT: OK.  But in the middle of that process,
23   the decision was made to bring the case to the district court
24   level and cease rolling over the orders of continuance?

25           MR. FIDDELMAN:  That is exactly correct, your Honor.

1    THE COURT:  All right.  Then I guess the first order
2 of business at this point is then for me to arraign the
3 defendant on the information, correct, Ms. Levine?
4    MS. LEVINE:  That's right.
5    THE COURT:  Ms. Levine, anything I need to be aware of
6 before embarking on that process?
7    I take it you have reviewed with Mr. Perez the
8 questions I'm apt to put by way of an arraignment?
9    MS. LEVINE:  That's correct, your Honor.
10    We are happy to move forward with that process and I'm
11 happy to discuss somewhat further the --
12    THE COURT:  The schedule.
13    MS. LEVINE:  Exactly.
14    THE COURT:  Very good.
15    Mr. Smallman, would you kindly place Mr. Perez under
16 oath.
17    (Defendant sworn)
18    You may be seated.
19    Mr. Perez, do you understand that you're under oath,
20 and that if you answer any of my questions falsely, your
21 answers to my questions may be used against you in another
22 prosecution for perjury?
23    THE DEFENDANT:  Yes, I understand.
24    THE COURT:  You may be seated.
25    THE DEFENDANT:  Thank you.

|   |   |
|---|---|
| 1 | THE COURT:  I'm going to ask you a number of questions |
| 2 | beginning with questions about your mental health and the use |
| 3 | of drugs and alcohol.  I'm not trying to pry.  I just need to |
| 4 | make sure that you have a clear mind today. |
| 5 | THE DEFENDANT:  I understand. |
| 6 | THE COURT:  At the end of those questions, I'm going |
| 7 | to ask you about how you plead to the charges, and I will also |
| 8 | make sure that you are knowingly waiving your right to be |
| 9 | charged by indictment.  OK? |
| 10 | THE DEFENDANT:  Yes. |
| 11 | THE COURT:  What is your full name? |
| 12 | THE DEFENDANT:  Jose Perez. |
| 13 | THE COURT:  How old are you? |
| 14 | THE DEFENDANT:  64 years old. |
| 15 | THE COURT:  How far did you go in school? |
| 16 | THE DEFENDANT:  I have two years of college. |
| 17 | THE COURT:  Where was that? |
| 18 | THE DEFENDANT:  Marist. |
| 19 | THE COURT:  Harrison, New York? |
| 20 | THE DEFENDANT:  Poughkeepsie, yes. |
| 21 | THE COURT:  In Poughkeepsie. |
| 22 | Have you ever been treated or hospitalized for any |
| 23 | mental illness? |
| 24 | THE DEFENDANT:  No. |
| 25 | THE COURT:  Are you now or have you recently been |

1    under the care of a doctor or a psychiatrist?
2            THE DEFENDANT:  Psychiatrist, no.
3            THE COURT:  Doctor?
4            THE DEFENDANT:  Doctor, yes.  I go -- I got -- I had
5    two strokes, I have COPD, restless leg syndrome, my vertigo is
6    whacked out, my memory is leaving.  So yeah.
7            THE COURT:  OK.  You've had a number of conditions for
8    which you've gotten medical treatment?
9            THE DEFENDANT:  Right.
10           THE COURT:  Let me ask you, are you currently taking
11   any medication for any of those conditions?
12           THE DEFENDANT:  Yeah.  Yes.
13           THE COURT:  Do you remember what those medications
14   are?
15           THE DEFENDANT:  No, I just -- I got them in the house
16   in the pill box.  I just ...
17           THE COURT:  The record will reflect that Mr. Perez was
18   just acting out the process of going through a pill box and one
19   by one extracting the pills and taking them.
20           Here is the important question, Mr. Perez.  Are any
21   of the medications you're taking either on their own or in
22   combination, do any of those medications impair your ability to
23   understand what is happening around you?
24           THE DEFENDANT:  No.
25           THE COURT:  Do any of them impair your ability to

1   communicate?
2          THE DEFENDANT:  No.
3          THE COURT:  Do any of them impair your ability to make
4   clear-headed decisions?
5          THE DEFENDANT:  No.
6          THE COURT:  OK.  In the past 24 hours, apart from the
7   medications you take for those conditions, have you taken any
8   drugs, medicine, pills, alcoholic beverages, anything like
9   that?
10         THE DEFENDANT:  No, sir.
11         THE COURT:  Is your mind clear today?
12         THE DEFENDANT:  Yes, sir.
13         THE COURT:  Do you understand what is happening in
14  this proceeding?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  Ms. Levine, I take it you've spent a lot
17  of time with your client over the past six months?
18         MS. LEVINE:  That's correct, your Honor.
19         THE COURT:  Do you have any doubt as to his competence
20  to enter a plea to waive indictment and then enter a plea to an
21  information today?
22         MS. LEVINE:  I do not.
23         If I could just have one second?
24         THE COURT:  Of course.
25         (Counsel conferring with defendant)

1            MS. LEVINE:  Your Honor, could we add just one more
2    fact?
3            THE COURT:  Yes, of course.
4            THE DEFENDANT:  I have to go tonight.  Pretrial is
5    sending me to a psychiatrist tonight.
6            MS. LEVINE:  There is a mental health treatment
7    condition of the bail, and I just --
8            THE COURT:  It begins tonight?
9            THE DEFENDANT:  Tonight.
10           THE COURT:  Thank you for telling me.  I think your
11   answer was accurate, but there is more context, it is more
12   complete because of what you have told me, and I appreciate it.
13           THE DEFENDANT:  Every Saturday I go to -- I started
14   going to a therapist that pretrial asked me to go.
15           THE COURT:  I see.
16           Ms. Levine, can you proffer at all what the nature of
17   that is?
18           MS. LEVINE:  So there was a mental health condition as
19   part of the bail package, and it didn't get enacted, frankly,
20   until very recently.
21           Now, in accordance with the original bail order, the
22   pretrial services office has sent him for -- it's for drug
23   treatment and mental health.
24           THE COURT:  I see.  That is commencing tonight?
25           MS. LEVINE:  I'm sorry?

1          THE COURT:  That is commencing tonight?

2          MS. LEVINE:  So he did the initial intake in the last

3   few weeks, the group started on Saturday, and now they are

4   sending him for a psychiatric evaluation.

5          THE COURT:  Understood.  Thank you.  Very helpful.

6          Ms. Levine, with that, you don't have any doubt as to

7   your client's competence to waive indictment and to enter what

8   I take will be an initial not guilty plea?

9          MS. LEVINE:  That's correct.

10          THE COURT:  Mr. Fiddelman, how about you, same answer?

11          MR. FIDDELMAN:  Same answer, your Honor.

12          THE COURT:  Based on Mr. Perez's response to my

13   questions, based on his demeanor as he appears before me, and

14   importantly, based on counsel's independent assessments, I find

15   that he is competent both to waive indictment and to enter a

16   plea which I expect, at least at this state, will be not

17   guilty.

18          All right.  Let's turn now to the waiver of

19   indictment.

20          Mr. Perez, the document which contains the charge

21   which you are agreeing will proceed in this case is called an

22   information.  It has been issued by the United States Attorney.

23   This is a serious crime.  You have a constitutional right to

24   require the government to present evidence to a grand jury

25   which may or may not vote to charge you with this crime.

J4OsPERa

| | |
|---|---|
| 1 |     Do you understand what a grand jury is? |
| 2 |     THE DEFENDANT:  Yes, sir. |
| 3 |     THE COURT:  All right.  If the grand jury did vote to |
| 4 | charge you with this crime, the charge would be contained in a |
| 5 | document called an indictment rather than an information, and |
| 6 | the difference between an indictment and an information is that |
| 7 | an indictment would be signed both by the United States |
| 8 | Attorney and the foreperson of the grand jury that voted to |
| 9 | return the indictment.  Whereas, an information is signed just |
| 10 | by the United States Attorney because there has been no grand |
| 11 | jury. |
| 12 |     Do you understand that? |
| 13 |     THE DEFENDANT:  Yes, sir. |
| 14 |     THE COURT:  Do you wish to give up your right to be |
| 15 | charged by a grand jury? |
| 16 |     THE DEFENDANT:  Yes, sir. |
| 17 |     THE COURT:  All right.  Mr. Smallman has handed up to |
| 18 | me a waiver of indictment form. |
| 19 |     Ms. Levine, is this your signature? |
| 20 |     MS. LEVINE:  Yes, sir. |
| 21 |     THE COURT:  Mr. Perez, is this your signature dated |
| 22 | today? |
| 23 |     THE DEFENDANT:  Yes, sir. |
| 24 |     THE COURT:  It has been witnessed by what is familiar |
| 25 | to me as the signature of Mr. Smallman. |

1         All right.  When you signed this form, did you
2  understand that you were acknowledging your willingness to give
3  up your right to be indicted by a grand jury?
4         THE DEFENDANT:  Yes, sir.
5         THE COURT:  All right.  I find a knowing and voluntary
6  waive of the right to be indicted by a grand jury, and at this
7  point, let me just ask you, have you read the information?
8         THE DEFENDANT:  Yeah, I --
9         THE COURT:  You have?
10        THE DEFENDANT:  I have a copy at home.
11        THE COURT:  OK.  But you have read it, correct?
12        THE DEFENDANT:  Yes.
13        THE COURT:  Have you had an opportunity to discuss it
14 with Ms. Levine?
15        THE DEFENDANT:  Yes, I have.
16        THE COURT:  Are you prepared now to enter a plea to
17 the information?
18        THE DEFENDANT:  Not guilty, sir.
19        THE COURT:  Not guilty.  Very good.
20        Anyone believe any further question need to be put by
21 way of arraignment?
22        MR. FIDDELMAN:  No, your Honor.
23        MS. LEVINE:  No, your Honor.
24        THE COURT:  All right.  Then having arraigned the
25 defendant and having gotten the summary of the case from

1   Mr. Fiddelman, can you tell me, Mr. Fiddelman, just about the
2   Rule 16 discovery in the case.
3              MR. FIDDELMAN:  Yes, your Honor.
4              So the Rule 16 discovery here will consist of a record
5   of the text message and phone dating app chats between the
6   defendant and the undercover agent, and that would include the
7   photographs and videos that were exchanged back and forth.  It
8   will also consist of traditional law enforcement reports, as
9   well as surveillance video from the location, the Dunkin'
10  Donuts, where the final in-person meeting took place and where
11  the defendant was arrested.
12             There are also two physical phones that were ceased
13  from the defendant.  The first is his phone, which we
14  understand was the phone used to engage in these
15  communications, and the second is the additional phone that the
16  defendant had on him for purposes of giving as a gift to the
17  undercover.
18             With respect to discovery, in connection with the
19  mitigation process, the government has produced pre-indictment
20  discovery to the defense consisting of the text messages
21  between the undercover and the defendant.  The results of a
22  search warrant that was executed on the defendant's social
23  media app account on the dating app that he used to initially
24  connect with the undercover, and that contains all the chats
25  the defendant has engaged in with anyone in the course of the

J4OsPERa

1    use of that dating app, and the defendant's criminal history.
2            So there is only a limited amount of discovery
3    remaining to be produced.
4            THE COURT:  What other Rule 16 discovery is there that
5    hasn't been produced?
6            MR. FIDDELMAN:  I think there may be some police
7    reports and there is the surveillance video from the in-person
8    meeting.
9            THE COURT:  I take it that will be produced soon?
10           MR. FIDDELMAN:  Yes.
11           THE COURT:  When do you expect to be complete with
12   Rule 16 discovery?
13           MR. FIDDELMAN:  I would ask for two weeks yep.  The
14   alternative, if defense is willing, we could potentially ask
15   for a longer date because of the possibility that the
16   mitigation process will resolve.  Either way is fine with the
17   government.
18           THE COURT: All right.  Thank you.
19           Let me hear from Ms. Levine then.
20           Ms. Levine, on discovery, does two weeks make sense to
21   you?
22           MS. LEVINE:  Yes.  I think if I could return to the
23   timeline of the mitigation submission and then revisit
24   discovery in that context.
25           Mr. Fiddelman is correct that the government asked us

1    significant followup questions in response to our submission,
2    that those questions triggered another -- we needed to collect
3    some documentation in order to sufficiently respond.  As of
4    yesterday, I think we now have the documentation we need,
5    mostly consisting of medical records, which are somewhat
6    voluminous.
7         But this is all to say, I expect that I can have our
8    submission back to the supplemental submission to Mr. Fiddelman
9    within two weeks.  Because we're deep in this negotiation, I'm
10   happy to relieve the government of their discovery, the
11   remainder of their discovery obligation for the time being, if
12   that is their preference and if the court is willing to
13   accommodate that.
14        THE COURT:  Let me try it this way.  You're probably
15   in the best position to answer the question when it makes most
16   logical sense to have a next conference.
17        MS. LEVINE:  I think what I would propose is that we
18   come back here in approximately 30 days with the expectation
19   that I'll have the submission to the government within two
20   weeks, and then the government has two weeks to consider the
21   submission.
22        THE COURT:  All right.  I guess, look, ideally, if
23   we're destined to have a disposition in this case, it would
24   happen at our next conference --
25        MS. LEVINE:  That's correct.

1    THE COURT:  -- rather than your telling me we have a
2 disposition, but I need to work out some details.
3    MS. LEVINE:  Right.
4    THE COURT:  I would rather spare everybody the hassle
5 of multiple conferences.
6    MS. LEVINE:  By that logic, I probably should have
7 proposed 45 days, so that once the government gets back to us,
8 we then have an opportunity to consider them and the
9 consequences thereof.
10    THE COURT:  As it relates to discovery, I guess what
11 I would like to arrange is this.  At our next conference in
12 approximately 45 days, either as seems very possible, there
13 will be a disposition entered then.  I don't mean to pry in
14 terms of your discussions, but I assume that at least the
15 dispositions you're talking about largely include a guilty
16 plea.  There may be a deferred prosecution bid here as well on
17 the assumption that we're talking about a guilty plea.  It
18 would be entered at that next conference.
19    If, however, we're not going that route, I would like
20 you by that next conference to have had an opportunity to
21 review the remaining Rule 16 material so that at that
22 conference, you can then tell me whether, for example, there is
23 some suppression motion or what the direction of this case is
24 likely to be.
25    MS. LEVINE:  Right.

1           THE COURT:  I'm happy to schedule this 45 days from
2    now, but may I suggest if you're not clearly on track for a
3    disposition, two thirds of the way through that, about the
4    third-day mark, government, you promptly then complete your
5    Rule 16 discovery so that Ms. Levine has had a chance to make
6    sense of it and guide me as to the future course of this
7    prosecution at that next conference.
8           Work?
9           MS. LEVINE:  That's great.  Thank you.
10          MR. FIDDELMAN:  Yes, your Honor.
11          THE COURT:  How about Wednesday, June 5, at ten a.m.?
12          THE DEFENDANT:  June what?
13          THE COURT:  5.
14          THE DEFENDANT:  My birthday is June 6.
15          THE COURT:  June what?
16          THE DEFENDANT:  6.
17          THE COURT:  D-Day.
18          THE DEFENDANT:  My birthday.
19          THE COURT:  Very good.  It is a famous date in
20   American history.
21          THE DEFENDANT:  Thank you.
22          MS. LEVINE:  June 5 is fine.
23          THE DEFENDANT:  Yeah.
24          THE COURT:  You're 64?
25          THE DEFENDANT:  I'm going to be 65, sir.

Case 1:19-cr-00297-PAE   Document 19   Filed 05/28/19   Page 17 of 18    17
J4OsPERa

|   |   |
|---|---|
| 1 | THE COURT:  You'll be 65 on June 6? |
| 2 | THE DEFENDANT:  Yes, sir. |
| 3 | THE COURT:  All right.  Got it.  So you were born on |
| 4 | the tenth anniversary of D-Day. |
| 5 | THE DEFENDANT:  Yes.  Anyway ... |
| 6 | THE COURT:  All right.  Enough about that. |
| 7 | MS. LEVINE:  June 5 is fine. |
| 8 | THE COURT:  We'll do June 5 at ten a.m.  Very good. |
| 9 | Is there an application to exclude time? |
| 10 | MR. FIDDELMAN:  There is, your Honor. |
| 11 | In light of the parties' continuing negotiations over |
| 12 | a potential disposition, the government moves to exclude time |
| 13 | under the Speedy Trial Act until June 5, 2019, as being in the |
| 14 | public interest to allow those discussions to continue. |
| 15 | THE COURT:  Very good. |
| 16 | Any objection? |
| 17 | MS. LEVINE:  No. |
| 18 | THE COURT:  All right.  I'll exclude time between now |
| 19 | and June 5 pursuant to Title 18, United States Code, Section |
| 20 | 3161(h)(7)(A).  I find that the interest of justice outweigh |
| 21 | the interest of the defense and the public in a speedy trial. |
| 22 | In particular, given the nature of the case, it is unsurprising |
| 23 | that there are extensive extended discussions about factors |
| 24 | relevant to a potential disposition.  Counsel have indicated |
| 25 | that those discussions have gone a long way, but need a little |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4OsPERa

1   more time.  The extra time is needed to allow you to complete
2   that process.
3            Anything further from the government?
4            MR. FIDDELMAN:  No, your Honor.  Thank you.
5            THE COURT:  Anything further from the defense?
6            MS. LEVINE:  No, your Honor.  Thank you.
7            THE COURT:  I take it that the bail conditions that
8   were set in magistrate's court, you're comfortable staying in
9   place?
10           MR. FIDDELMAN:  That's correct.
11           The defendant is on home detention with strict
12  pretrial supervision and a number of other conditions that the
13  government has asked for.
14           THE COURT:  I assume there is electronics or either
15  monitor shut down in some way?
16           MR. FIDDELMAN:  That's correct.
17           THE COURT:  Very good.  Thank you.  That's fine.
18           We stand adjourned.
19           (Adjourned)
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300