UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

-v-

JOSE PEREZ,

                              Defendant.

19 Cr. 297 (PAE)

OPINION AND ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Jose Perez for compassionate release from Federal Medical Center Devens ("FMC Devens"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, the Court denies the motion.

I. **Background**

A. **Perez's Offense Conduct and Arrest**

In September 2018, Perez, age 64, used a cellphone-based dating app, Meet24, known by the FBI to be used by child sex offenders, to reach out to an undercover law enforcement officer (the "UC") posing on the app as a 12-year-old girl. Dkt. 141 ("Gov't Mem.") at 1. Perez had found the UC's profile page and sent a message introducing himself. *Id.* The UC identified herself as age 12. Perez responded by asking the UC whether she had a boyfriend. Perez claimed to be age 34 and stated: "I know there's a bunch of years between us but i like u." The UC repeated that she was age 12. Dkt. 113 ("Presentence Report" or "PSR") ¶ 20. The UC and Perez agreed to move their conversation to traditional text messages to communicate, and Perez gave the UC his cell phone number. *See id.* ¶¶ 17–20.

Over the next six weeks, Perez and the UC continued to communicate by text message. At one point, Perez stated: "I don't think of u as a 12 year old." *Id.* ¶ 21. At another point, Perez asked the UC if she had "ever seen a penis"; Perez told the UC that one day he would show her his penis. *Id.* Over the conversations, Perez repeatedly told the UC that, if they ever met, he would perform oral sex on her and would "penetrate" her. *Id.* He stated: "I'll b ur man and u my woman," and he asked the UC to "make love" with him and perform oral sex on him. *Id.* He repeatedly stated his intent to engage in oral, vaginal, and anal sex with the UC. *Id.* Perez also repeatedly asked the UC to take lewd naked photographs of herself and send them to him. *Id.* Perez sent the UC multiple photographs of himself. *Id.* These included lewd photographs of his genitals and a video of himself masturbating. *Id.* ¶¶ 21–22.

Eventually, the conversation turned to planning an in-person meeting between the UC and Perez so that the two could have sex. Perez asked for confirmation that the UC's family members would not be home so that it would be safe for them to return to the UC's residence. He stated: "If something happens i go to jail." *Id.* ¶ 21. The two agreed to meet on October 24, 2018 at a fast-food restaurant purportedly near the UC's home. *Id.* Perez asked the UC to wear sweatpants and no panties, for "easy access." *Id.* At the agreed-upon time and place, Perez arrived with a gift for the UC and was arrested by law enforcement. *Id.* ¶¶ 21, 25–26.

### B. Perez's Bail Jumping

On July 30, 2019, after the parties reached an agreement in principle to resolve the case, the Pretrial Services Office reported significant issues with Perez's compliance with his bail conditions, including continued drug use, failure to maintain his GPS ankle bracelet, failure to report to Pretrial Services as directed, and repeated unauthorized departures from his home. Gov't Mem. at 2. The Court scheduled a bail revocation hearing for August 1, 2019. *Id.* Perez

failed to appear; he instead cut off his ankle bracelet and absconded. *Id.* This Court issued a bench warrant, and the United States Marshals Service was assigned to apprehend Perez. *Id.* Perez's $75,000 bail bond was forfeited—as to Perez and, initially, as to his suretor, his wife Anette Piri-Perez. *Id.* Perez remained a fugitive until his apprehension by the Marshals on December 8, 2019. *Id.* Piri-Perez's assistance was integral to Perez's apprehension, resulting in the Court agreeing to release her from her obligations under the bail bond. The Court ordered Perez detained pending trial. *See* PSR ¶¶ 10–11; Dkt. 40 (judgment forfeiting $75,000 bond executed by Perez and Piri-Perez) (12/5/19); Dkt. 41 (detention hearing as to Perez following arrest) (12/9/19); Dkt. 44 (judgment setting aside forfeiture as to Piri-Perez) (12/12/19); Dkt. 50 ("12/12/19 Tr.") at 15.

On March 19, 2020, due to the encroaching COVID-19 public health crisis and Perez's health issues including chronic obstructive pulmonary disease ("COPD"), the Court issued an order releasing Perez on temporary emergency release pursuant to 18 U.S.C. § 3142(i). Dkt. 62. The restrictive conditions of release required, *inter alia*, that he live with Piri Perez, that he not leave the home without court permission, that he be subject to GPS pretrial monitoring, and that he execute a $75,000 bail bond co-signed by Piri-Perez and Perez's adult son. *Id.*; PSR ¶ 12.

On October 7, 2020, Perez was scheduled to appear to enter a guilty plea. Perez again cut off his ankle bracelet and absconded, and a warrant was issued for his arrest. *See* Dkt. 82 (transcript of 10/8/20 conference); Dkt. 77 ¶¶ 13–14. The Court put in place a forfeiture judgment as to Perez, Piri-Perez, and Perez's adult son with respect to the bail bond. Dkt. 87. On November 18, 2020, the Marshals re-arrested Perez, without any assistance from Piri-Perez. Dkt. 93; PSR ¶ 13.

### C. Perez's Guilty Plea

3

On January 19, 2021, Perez pled guilty pursuant to a plea agreement to (1) attempted receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B); and (2) bail jumping, in violation of 18 U.S.C. § 3146. Gov't Mem. at 3. These charges carried a mandatory minimum sentence of five years' imprisonment and an aggregate maximum sentence of 30 years' imprisonment. *Id.* The plea agreement calculated Perez's offense level as 38 and criminal history category as III, yielding a Sentencing Guidelines range of 292 to 360 months' imprisonment. *See* Dkt. 109 (transcript of plea proceeding) at 36; PSR ¶¶ 5–8.

### D.  Perez's Sentencing

On October 13, 2021, the Court imposed sentence. Dkt. 130 ("Sent. Tr."). Consistent with the plea agreement, the Presentence Report calculated a Guidelines range of 292 to 360 months' imprisonment. PSR ¶ 113. The Government recommended a sentence below that range but above 96 months' imprisonment, citing the seriousness of Perez's crime in soliciting a child for sex; the need to protect the public; his extensive criminal history; and the need to promote respect for law and provide for general deterrence. The Government acknowledged that Perez suffered from adverse medical conditions that would make imprisonment harder for him than for a health defendant. *See* Dkt. 127. Perez sought the mandatory minimum sentence of 60 months' imprisonment, arguing that he was no longer a danger to the community, that he was in declining health, and that his wife was declining and needed him. *See* Dkt. 125.

Assessing the sentencing factors, the Court rejected out of hand the defense's request for a 60-month sentence, finding such "quite disproportionate" to Perez's offense. Sent. Tr. at 46. The offense, the Court noted, consisted of "trying to sexually corrupt a person you understood to be a minor and whom you had good reason to understand to be age 12." *Id.* And Perez "had to appreciate" that his conduct "could have caused incalculable emotional and psychological

4

damages," yet for his "sick gratification," he "endangered a child and ran a grave risk of horribly messing up her life," and persisted at this for six weeks, and was stopped only on the brink of having sexual contact with her. *Id.* at 47–48. Perez also jumped bail twice, both times breaching the Court's trust in him, the second time exploiting the Court's solicitude to "the mortal threat" that COVID-19 presented to Perez. *Id.* at 49. That act of absconding, the Court stated, showed "extreme disrespect for the law and for this Court," and was "grossly selfish," requiring law enforcement personnel, "in the middle of a once-in-a-century pandemic," to "mobilize resources to look for you." *Id.* at 50. Perez's absconding had also disrespected his counsel, who "had swung into high gear to get you out of jail to save you from getting COVID there," and other inmates who in good faith sought "temporary release [from prison] on account of the disparate threat posed by COVID." *Id.* at 50–51. The Court told Perez he had lost all credibility with the Court, *id.* at 51 ("[Y]our word has lost all value with me. Your word is mud. Your word is garbage."), which henceforth was unprepared to "credit anything you say unless there is independent corroboration." *Id.* at 52. Other sentencing interests, the Court stated, favored a high sentence. These included general deterrence of would-be sex offenders and bail jumpers, *id.* at 52–53; specific deterrence of Perez, including given his long and diverse criminal history dating to 1971, *id.* at 53–56; and the strong interest in public protection, *id.* at 56–57.[1] The Court

---

[1] The Court stated:

> "[G]iven your track record, I cannot have any confidence that when and if you are released in this case, you won't commit some other crime, as you have eventually each time you were released before. . . . [N]otwithstanding your age and your health, there is a real interest in protection. The longer you are in prison, the longer the next 12-year-old girl on a website like Meet24 will be protected from future sexual entreaties by you."

*Id.* at 56–57.

5

also considered mitigating factors, including Perez's acceptance of responsibility as reflected in his guilty plea, *id.* at 57–60, aspects of his personal history, and medical and physical challenges, *id.* at 60–61. The Court imposed a 120-month prison sentence, followed by a five-year supervised release term, finding it "the lowest sentence [the Court] can impose that fairly takes into account the [18 U.S.C. §] 3553(a) factors considered as a whole. *Id.* at 61.

### E. Perez's Compassionate Release Motion

On August 2, 2023, Perez filed a *pro se* motion seeking release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), from FMC Devens, a medical facility. Dkt. 135 ("Mtn."). On September 11, 2023, counsel filed a supplemental submission in support. Dkt. 140 ("Counsel Mem."). These argue that extraordinary circumstances support release because Perez's wife is incapacitated due to adverse health events in 2021, and Perez is her only available caregiver. Perez had previously submitted a compassionate release request to the warden of FMC Devens, which was denied.

On October 12, 2023, the Government submitted a letter-memorandum opposing Perez's motion. Gov't Mem. The Government acknowledges that Perez has satisfied § 3582(c)'s requirement of administrative exhaustion. *Id.* at 4.

## II.   Discussion

The Court first reviews the legal standards governing compassionate release motions, and then applies them to Perez's motion.

### A.   Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that

6

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a

7

district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

8

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for a*n immediate family member, this may support a sentence reduction. See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up)

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.     Application to Perez's Motion**

9

Measured in light of these standards, Perez's application for early release is easily denied, for three independent reasons.

First, Perez has failed to establish that extraordinary and compelling reasons justify his early release. Perez does not make any argument relating to his conditions of imprisonment or his own health. His argument is solely that he is needed as a caregiver for his wife, Piri-Perez, who has become "incapacitated" due to adverse medical circumstances. Mtn. at 4.

The Court acknowledges that, under the Sentencing Commission's guidance, where a defendant is the only available caregiver for an immediate family member, such may support a sentence reduction. U.S.S.G. § 1B1.13(b)(3). And the Court accepts for purposes of this motion the factual accuracy of Perez's account of his wife's medical challenges and incapacitation. That, however, does not justify Perez's release. As the Government points out, and as Perez's counseled submission notes, Piri-Perez is receiving full-time care from medical professionals in a nursing home. *See* Gov't Mem. at 6 (citing Counsel Mem. at 1, 4). Perez's premise that without him, Piri-Perez would lack access to a caregiver does not follow from the known facts. Perez also has his own physical limitations including those arising from COPD; he uses a walker and can only move around for short periods of time. *See* Gov't Mem. at 6 (citing Counsel Mem. at 5–6). The Court is skeptical that Perez has the practical capacity to attend to his wife's needs, which appear to be complex and medical, beyond assisting with quotidian chores. *See* Mtn. at 5 (noting that Piri-Perez "is on a feeding and medication tube" and "confined to a bed"). And there is no reason to assume that Perez, who has been incarcerated for the past three-plus years, has any preexisting experience or training with respect to ministering to a person with serious medical circumstances like Piri-Perez's. Finally, even assuming *arguendo* that Perez was well-equipped to take on his wife's complex and demanding care, Perez's track record of making false

10

promises to this Court leaves the Court with zero confidence that Perez would carry through on a promise, if released from FMC Devens, to devote himself to his wife's care. *See* Sent. Tr. at 51 ("[Y]our word has lost all value with me."). Two times after having been granted pretrial release, Perez absconded, each time exposing Piri-Perez to the forfeiture of the $75,000 bail bond that she co-signed. Before that, Perez had plotted to have a sexual assignation with a minor during his marriage to Piri-Perez. Perez's history does not give the Court any reason to trust his promise to put his wife's well-being above his parochial interests and impulses.

Second, for the reasons the Court set out in detail at sentencing, the § 3553(a) factors, considered together, demand that Perez serve a 120-month prison sentence. These principally include the need for just punishment in light of the gravity of Perez's conduct in enticing a minor for sex, in attempting to receive pornography, and in twice jumping bail. They also include the interests in general and specific deterrence and protection of the public. At sentencing, these interests led the Court to reject, out of hand, the defense's application for a 60-month sentence—an application based in part on the declining health of Perez and Piri-Perez. The facts bearing on the § 3553(a) factors have not materially changed since Perez's sentencing. Nor has the Court's considered assessment that these require a 120-month prison sentence. *See, e.g., United States v. Nguyen*, No. 07 Cr. 1121 (PAE), 2023 WL 2754303, at *4 (S.D.N.Y. Apr. 3, 2023) (denying compassionate release under 18 U.S.C. § 3582 because "there was abundant reason, anchored in the § 3553(a) factors" for the sentence imposed); *United States v. Kornegay*, No. 13 Cr. 428 (PAE), 2020 WL 7079412, at *4 (S.D.N.Y. Dec. 3, 2020) (denying compassionate release because even assuming extraordinary and compelling reasons for early release, "the § 3553(a) factors, viewed collectively, are inconsistent" with early release); *United States v. Sanchez*, No. 18 Cr. 390-3 (PAE), 2021 WL 1535256, at *3 (S.D.N.Y. Apr. 19, 2021) (finding a sentence

11

reduction would not "result in a sentence commensurate with the other § 3553(a) factors, including the need for the sentence imposed to reflect just punishment, protect the public, and provide specific deterrence"). Thus, Perez's application, whether construed to seek immediate release approximately one-third into his assigned prison term, or release on a later date but before the expiration of that term, is unpersuasive.

Third, the interest in public protection served by Perez's incapacitation remains real. Perez committed his underlying crimes (child enticement and child pornography) at age 64. He did so undeterred by a decades-long criminal record. "Given your track record," the Court told Perez at sentencing, "I cannot have any confidence that when and if you are released in this case, you won't commit some other crime, as you have eventually each time you were released before." Sent. Tr. at 56. The danger that Perez presents to the community, including by means of a cybercrime, remains today, notwithstanding his greater physical frailty. Perez's continued imprisonment will protect the public against the real risk of such recidivism. *See, e.g., United States v. Ortiz*, No. 16 Cr. 439 (PAE), 2020 WL 3640582, at *3 (S.D.N.Y. July 6, 2020) (denying early release because defendant, who actively participated in four serious acts of assault and violence, remained a danger to society); *United States v. Leon*, No. 15 Cr. 877 (PAE), 2020 WL 3100593, at *2 (S.D.N.Y. June 11, 2020) (denying early release because defendant, who participated in six acts of robber and violence, remained a danger to society); *United States v. Jordan*, No. 18 Cr. 834-2 (PAE), 2020 WL 3839629, at *4 (S.D.N.Y. July 8, 2020) (denying early release because defendant, who was a lead member of a violent gang, remained a danger to society).

## CONCLUSION

For the reasons above, the Court denies Perez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully requested to terminate the motions at dockets 135 and 140.

SO ORDERED.

                                                    *Paul A. Engelmayer*
                                                    PAUL A. ENGELMAYER
                                                    United States District Judge

Dated: January 23, 2024
       New York, New York